**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No.:     4:25-cv-01768 |
| VENKATESH SATTARU, | ) ) | |
| NITYA SATTARU, | ) ) | |
| and | ) ) | |
| JOHN DOE, | ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Allstate Vehicle and Property Insurance Company ("Allstate"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment, states as follows:

1.      Allstate brings this action seeking the interpretation of a homeowner's insurance policy and a declaration of its rights and obligations thereunder, concerning claims asserted against its insureds Venkatesh Sattaru and Nitya Sattaru asserted by John Doe, arising out of alleged actions of Mr. and Mrs. Sattaru between December 16, 2022 and November 28, 2023.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Allstate Vehicle and Property Insurance Company is a corporation incorporated under the laws of the State of Illinois with its principal place of business in the State of Illinois, engaged in the business of insurance and licensed to transact that business in the State of Missouri.

3.     Upon information and belief, Defendant Venkatesh Sattaru (hereinafter "Mr. Sattaru") is an individual domiciled in the State of Missouri and, therefore, a citizen of Missouri.

4.     Upon information and belief, Defendant Nitya Sattaru (hereinafter "Mrs. Sattaru") is an individual domiciled in the State of Missouri and, therefore, a citizen of Missouri.

5.     Upon information and belief, Defendant John Doe is an individual domiciled in the State of Missouri and, therefore, a citizen of Missouri.

6.     This case and controversy involve citizens of different states.

7.     The insurance policy at issue in this matter has a liability limit of $300,000 per occurrence.

8.     Based on the allegations in the Underlying Claim (but without making any admission as to the merits thereof), the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.     The United States District Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs and because complete diversity of citizenship exists between Plaintiff and Defendants.

10.     Venue is proper in the United States District Court for the District of Missouri under 28 U.S.C. § 1391(a) because a substantial amount of the events and occurrences giving rise to this action occurred in this District in that all Defendants are citizens of Missouri; the Policy upon which this action is premised was entered into in Missouri; the dispute involves injury that was inflicted in St. Charles County, Missouri; and Missouri law applies to the interpretation of the Policy and the parties' rights and duties thereunder.

11.    This Court "may declare the rights and other legal relations of any interested parties seeking such declaration" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) with respect to the policy of insurance issued by Allstate, and all above referenced parties are interested parties with respect to the determination of rights pursuant to the insurance policy issued by Allstate.

12.    An actual justiciable controversy exists between Plaintiff and Defendants Mr. and Mrs. Sattaru. In particular,

    a.    Defendant John Doe has sued both Mr. Sattaru and Mrs. Sattaru in a state court lawsuit, as set out in more detail below.

    b.    On or about August 13, 2025, the Sattarus' personal counsel tendered the state court lawsuit to Plaintiff Allstate to provide a defense under the Sattarus' homeowner's policy.

    c.    After it received notice of the lawsuit against Mr. and Mrs. Sattaru, Plaintiff has undertaken the defense of both Mr. and Mrs. Sattaru under a reservation of rights.

    d.    Defendant disputes that it owes any duty to defend or indemnify Mr. Sattaru or Mrs. Sattaru in the underlying lawsuit or any judgment resulting therefrom. Thus, an actual controversy exists between Plaintiff and Mr. Sattaru.

13.    Furthermore, an actual controversy exists between Plaintiff and Defendant John Doe. In particular:

    e.    Defendant John Doe is seeking a judgment against Mr. Sattaru and Mrs. Sattaru in the underlying action.

f.   MO. REV. STAT. 379.200 authorizes a judgment creditor to proceed against an insurer if the insured fails to satisfy a final judgment within 30 days after the judgment.

g.   In addition, Plaintiff disputes that it owes any duty to indemnify any such judgment against Mr. Sattaru or Mrs. Sattaru based on the applicable insurance policy, as set forth below.  Thus, an actual controversy exists between Plaintiff and Defendant John Doe.

14.    Litigation as to this controversy is imminent and inevitable, and the resolution of the matters raised in this declaratory judgment action will dispose of the issues and disputes between the parties.

15.    All necessary and proper parties are before the Court for the matters in controversy.

16.    Allstate has no other adequate remedy at law.

**FACTUAL ALLEGATIONS OF UNDERLYING CLAIM**

17.    On March 5, 2024, Defendant John Doe filed a Petition in the Circuit Court of St. Charles County, Missouri, Case No. 2411-CC00257 ("Underlying Petition"). A copy of the Underlying Petition is attached hereto as **Exhibit A**.

18.    The Underlying Petition names Mr. Sattaru and Mrs. Sattaru as defendants, along with several other two other individuals, Nikhil Penmatsa and Sravan Penumetcha, and ten businesses allegedly owned by the Sattarus or the other defendants.

19.    The Underlying Petition alleges that Mr. Sattaru recruited John Doe to the United States from India "for the purposes of forced labor, peonage, slavery and/or involuntary servitude," and that between December 16, 2022 and November 28, 2023, John Doe Plaintiff resided at the residences of Mr. and Mrs. Sattaru and/or the residences of other defendants in the Underlying

4

Action. Doe alleges that Mr. Sattaru and two other named defendants held him captive at various residences and forced him to do unpaid work for the benefit of one or more of their companies and the benefit of the individual defendants.

20.     According to the Underlying Petition, Mr. Sattaru, Penmatsa, and Penumetcha repeatedly threatened Doe with bodily harm or death, physically beat him, permitted him limited privileges to leave the premises, forced him to sleep in a locked room on the floor under video surveillance, confiscated his passport, kept him isolated from his family, and otherwise treated him inhumanely and "subjected [him] to a litany of abuse."

21.     The Underlying Petition also alleges that Mr. Sattaru fraudulently obtained a credit card in Doe's name and used it for himself and other defendants.

22.     The Underlying Petition alleges that Nitya Sattaru resided at the residences in question, that she had Doe under her care, custody, and/or control, and that she was aware of Doe's circumstances, including the alleged threats, harm, and abuse inflicted by the other defendants.

23.     In 2023, Mr. Sattaru was criminally charged in St. Charles County Circuit Court with Trafficking for the Purposes of Slavery/Involuntary Servitude/Peonage or Forced Labor; Contributing to Human Trafficking through Misuse of Documentation; Accessory to Domestic Assault in the First Degree; Armed Criminal Action; Kidnapping in the First Degree; and Felony Abuse through Forced Labor.

24.     Penmatsa and Penumetcha were also arrested and criminally charged.

25.     The first cause of action alleged in the Underlying Petition against Defendants Mr. and Mrs. Sattaru is for **"Battery and/or Conspiracy to Commit Battery"** in **"Count I"**, in which Defendant Doe alleges the following:

    a. "On multiple occasions, Defendants Venkatesh Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha assaulted and actually touched Plaintiff."

    b. "The assaults and touchings were unlawful and unjustified."

    c. "Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha had an agreement and/or meeting of the minds regarding one or more of the assaults/batteries of Plaintiff and using said batteries to unlawfully force Plaintiff into forced labor, involuntary servitude, peonage slavery for the benefit of one or more Defendants, and/or to unlawfully control Plaintiff, and/or for Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha own sick and twisted enjoyment."

    d. "The batteries and assaults were committed by one or more of Defendants Venkatesh Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha as a means of achieving the object of the agreement or as the object of the agreement."

    e. "As a result of the conduct of Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha, Plaintiff has suffered serious physical injury, pain and suffering, financial loss, lost income for the unpaid work, emotional distress, will continue to suffer emotional distress and pain and suffering in the future, and will suffer economic damages in the future."

26.    The second cause of action alleged in the Underlying Petition against Defendants Mr. and Mrs. Sattaru is for violations of **"18 U.S.C. § 1595"** in **"Count II"**, in which Defendant Doe alleges the following:

a. "Upon information and belief, all Defendants knowingly benefited, attempted to benefit, or conspired to benefit, financially or by receiving one or more thing(s) of value from the participation in the trafficking and forced labor of Plaintiff as described in Exhibit #1 and this Petition."

b. "As a result of Defendants' conduct, Plaintiff has suffered serious physical injury, pain and suffering, financial loss, lost income for the unpaid work, emotional distress, will continue to suffer emotional distress and pain and suffering in the future, and will suffer economic damages in the future."

c. "Pursuant to 18 USC §1595(a), Plaintiff is entitled to an award of reasonable attorneys' fees."

27.     The third cause of action alleged in the Underlying Petition against Defendants Mr. and Mrs. Sattaru is for violations of **"False Imprisonment"** in **"Count III"**, in which Defendant Doe alleges the following:

a. "Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha detained and/or restrained **the** Plaintiff against the Plaintiffs will."

b. "The detention(s) of Plaintiff were unlawful."

c. "Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha had an agreement and/or meeting of the minds regarding the repeated false imprisonment of Plaintiff and using said false imprisonment to unlawfully benefit from and force Plaintiff into forced labor, involuntary servitude, peonage, slavery for the benefit of one or more Defendants, and/or to unlawfully control Plaintiff, and/or

for Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha own sick and twisted enjoyment."

d. "The false imprisonments were committed by one or more of Defendants Venkatesh Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha as a means of achieving the object of the agreement or as the object of the agreement."

e. "As a result of the conduct of Defendants Venkatesh Sattaru, Nitya Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha, Plaintiff has suffered serious physical injury, pain and suffering, financial loss, lost income for the unpaid work, emotional distress, will continue to suffer emotional distress and pain and suffering in the future, and will suffer economic damages in the future."

28.    The fourth cause of action alleged in the Underlying Petition against Defendant Mrs. Sattaru is for **"Negligence"** in **"Count IV"**, in which Defendant Doe alleges the following:

a. "Defendant Nitya Sattaru owed Plaintiff a duty to act as a reasonable person under the circumstances."

b. "Defendant Nitya Sattaru breached her duty in one or more of the following ways:

    i. "Failing to render aid when she contributed to placing, and did place, Plaintiff in peril by continuing to expose him to Defendants Venkatesh Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha, whom she knew were beating, harming and assaulting Plaintiff, and when she knew Plaintiff was falsely imprisoned;"

8

    ii.  "Failing to report the felonies committed against Plaintiff at her residence when she knew of such conduct;"

    iii.  "Failing to properly care for Plaintiff;"

    iv.  "Failing to protect Plaintiff from known dangerous third persons (Venkatesh Sattaru, Nikhil Penmatsa, and/or Sravan Penumetcha)."

  c.  "As a result of Defendant Nitya Sattaru's conduct, Plaintiff has suffered serious physical injury, pain and suffering, financial loss, lost income for the unpaid work, emotional distress, will continue to suffer emotional distress and pain and suffering in the future, and will suffer economic damages in the future."

## THE INSURANCE POLICIES

29.    Allstate Vehicle and Property Insurance Company issued a House and Home Policy of insurance, Policy Number 845264937, to Nitya Sattaru and Reddy Sattaru as the Named Insureds, with effective dates of March 23, 2023 to March 23, 2024 (the "Policy"). A certified copy of the Policy is attached hereto as **Exhibit B** and incorporated by reference herein.

30.    The Policy contains Family Liability coverage in the amount of $300,000 per occurrence, subject to the Policy's terms and conditions.

31.    The Policy contains the following relevant provisions:

**General**

**Definitions Used In This Policy**

Throughout this policy, when the following words appear in bold type, they are defined as follows:

* * *

3. **Business**—means:

a)  any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business. ...**

\* \* \*

5.  **Insured person(s)** – means **you** and, if a resident of **your** household:

a)  any relative; and

b)  any person under the age of 21 in **your** care.

\* \* \*

6.  **Insured premises—**means:

a)  the **residence premises;** and

b)  under **Section II** only:

1)  the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

2)  any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;

3)  cemetery plots or burial vaults owned by an **insured person;**

4)  land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;

5)  any premises used by an **insured person** in connection with the **residence premises;** and

6)  any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

7.  **Occurrence—**means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage.**

8.  **Property damage—**means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

\* \* \*

10.  **Residence premises—**means the **dwelling,** other structures and land located at the address stated on the Policy Declarations.

\* \* \*

10

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises,** applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations.

**Section II—Family Liability And Guest**

**Medical Protection**

**Family Liability Protection–Coverage X**

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person.** If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

**Losses We Do Not Cover Under Coverage X:**

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:

    a) such **insured person** lacks the mental capacity to govern his or her conduct;

    b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

    c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

    * * *

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

11

\* \* \*

12.    **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person.**

**We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or parttime **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

\* \* \*

13.    **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises,** owned, rented or controlled by an **insured person. We** will not apply this exclusion to **bodily injury** to a **residence employee.**

\* \* \*

**Section II Conditions**

1. **What You Must Do After A Loss**

   In the event of **bodily injury** or **property damage, you** must do the following:

   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person;**
      4) the names and addresses of any witnesses.

   b) Promptly send **us** any legal papers relating to the accident.

   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person;**
      3) attend any hearing or trial.

\* \* \*

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

\* \* \* \*

12

## COUNT I – DECLARATORY JUDGMENT – NO COVERAGE FOR CLAIMS AGAINST MR. SATTARU

32.     No coverage exists under the Policy for any of the allegations contained in the claims against Mr. Sattaru or Mrs. Sattaru in the Underlying Petition.

### *No "Occurrence" Alleged*

33.     The Policy provides coverage for bodily injury to which the Policy applies that is caused by an "occurrence." The Policy defines an "occurrence" as an "accident".

34.     The Underlying Petition generally alleges that Defendant Doe was injured as a result of being ***intentionally*** trafficked to the United States for forced labor. The Underlying Petition alleges that Mr. Sattaru "recruited, lured, and enticed [Defendant Doe] to come to the United States ***for the purposes of*** forced labor, peonage, slavery, and/involuntary servitude." Thus, the alleged injury does not arise out of an "accident".

35.     Specifically, Count I and III of the Underlying Petition allege "battery" and "false imprisonment", which are intentional torts under Missouri law. Thus, the injury alleged in these claims is not an injury resulting from an "accident" so as to trigger coverage.

36.     Count I alleges that Mr. Sattaru and/or others "assaulted and actually touched" Defendant Doe, and Count III alleges that Mr. Sattaru and other defendants "detained and/or restrained [Defendant Doe] against [his] will." Both Counts I and III allege that Mr. and Mrs. Sattaru and other defendants "had an agreement and/or meeting of the minds" regarding the assaults, batteries, and false imprisonments and about using those actions "to unlawfully force Defendant Doe in to forced labor and involuntary servitude, peonage, and slavery." Because these are allegations of intentional actions, these Counts do not allege an "accident" so as to trigger coverage.

37.     Additionally, Count II of the Underlying Petition alleges that Mr. and Mrs. Sattaru and the other defendants "knowingly benefited, attempted to benefit, or conspired to benefit" from "participation in the trafficking and forced labor of" Defendant Doe. These are allegations of intentional behavior, not an "accident" so as to trigger coverage.

38.     Furthermore, Mr. Sattaru was charged with the following six felonies in connection with the allegations in the Underlying Petition. To the extent Mr. Sattaru is found guilty of such charges, his actions were not "accidental," and the incident alleged in the Underlying Petition was not an "accident".

39.     Moreover, Count IV of the Underlying Petition, for "Negligence", alleges that Mrs. Sattaru continued to expose Defendant Doe to the other defendants who she *knew* were physically harming and falsely imprisoning him, failed to report *known* felonies occurring at her residence, and failed to protect Doe from *known* dangerous third persons. Thus, these are allegations of knowing, intentional behavior, not an accident so as to trigger coverage.

40.     Additionally, to the extent any allegations of negligence do not explicitly allege knowing behavior by Mrs. Sattaru, all of her alleged "negligent" actions occurred in the context of the alleged "trafficking and forced labor" of Defendant Doe at her residence, from which Mrs. Sattaru allegedly "knowingly benefited, attempted to benefit, or conspired to benefit," according to other allegations in the Petition. Thus, Count IV alleges injuries resulting from intentional actions, and not from an "accident" so as to constitute an occurrence.

41.     Because the allegations against Mr. Sattaru and Mrs. Sattaru in Counts I through IV of the Underlying Petition do not allege an "accident" and therefore do not allege an "occurrence," there is no coverage for said claims under the Policy.

*Intentional/Criminal Acts Exclusion*

42.    Exclusion 1 of the Policy excludes coverage for bodily injury "intended by, or which may reasonably be expected to result" from "intentional or criminal acts of any insured person."

43.    As stated above, Counts I and III of the Underlying Petition allege that Mr. Sattaru and/or others "assaulted," "detained and/or restrained [Defendant Doe] against [his] will," and that Mr. and Mrs. Sattaru and other defendants "had an agreement" to use these actions to exploit Defendant Doe for forced labor. Count II alleges that all the defendants acted "knowingly" to benefit from "participation in the trafficking and forced labor of" Defendant Doe, and Count IV alleges Mrs. Sattaru acted knowingly and failed to protect Defendant Doe from intentional harm by other defendants including Mr. Sattaru. As noted above, these are all allegations of intentional actions.

44.    On information and belief, Mr. Sattaru was the husband of Mrs. Sattaru at the time of the allegations in the Underlying Petition and was also a resident of her household. Thus, he was an "insured person" under the Policy.

45.    Thus, because all of the injuries alleged in the Underlying Petition were a result of intentional acts of either Mr. Sattaru or Mrs. Sattaru, they were all injuries "intended by" or "reasonably expected to result from the intentional … acts of any insured person." Therefore, Exclusion 1 bars coverage for all claims against Mr. and Mrs. Sattaru in the Underlying Petition.

46.    Furthermore, Mr. Sattaru was charged with the following six felonies in connection with the allegations in the Underlying Petition: Trafficking for the Purposes of Slavery/Involuntary Servitude/Peonage or Forced Labor; Contributing to Human Trafficking through Misuse of

Documentation; Accessory to Domestic Assault in the First Degree; Armed Criminal Action; Kidnapping in the First Degree; and Felony Abuse through Forced Labor.

47.    Accordingly, to the extent Mr. Sattaru may be found guilty of the felony charges against him, the alleged injury was also "intended by or reasonably expected to result from the … criminal acts" of Mr. Sattaru. Thus, to the extent Mr. Sattaru is guilty of the charges pending against him, Exclusion 1 also applies to exclude all coverage under the Policy based on the "criminal acts" portion of the exclusion as well.

48.    Thus, there is no coverage under the Policy for the claims against Mr. Sattaru or Mrs. Sattaru in Counts I, II, III, and IV of the Underlying Petition.

*Business Activities*

49.    Exclusion 12 of the Policy excludes coverage for bodily injury "arising out of the past or present business activities of an insured person." The term "business" is defined as "any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes."

50.    All of Defendant John Doe's injuries alleged in the Underlying Petition allegedly occurred as a result of his recruitment to the United States by Mr. Sattaru and his being held captive and forced to do unpaid work for various businesses owned by or associated with Mr. Sattaru.

51.    Thus, the alleged injuries were incidental to the efforts of Mr. Sattaru and his associates to use Plaintiff to the advantage of their businesses.

52.    On information and belief, Mr. Sattaru was the husband of Mrs. Sattaru at the time of the allegations in the Underlying Petition and was also a resident of her household. Thus, he was an "insured person" under the Policy.

16

53.     Therefore, the injury alleged in Counts I, II, III, and IV of the Underlying Petition was an injury "arising out of the past or present business activities of an insured person," and Exclusion 12 applies. Accordingly, there is no coverage under the Policy for the claims against Mr. Sattaru or Mrs. Sattaru.

### *Workers Compensation Exclusion*

54.     The Policy excludes coverage for bodily injury "to any person eligible to receive any benefits required to be provided, or voluntarily provided" by an insured person under any workers' compensation law.

55.     The Underlying Petition alleges that Defendant John Doe performed forced labor for Mr. Sattaru and/or his companies. To the extent Doe was an employee of the companies and/or of Mr. Sattaru, he would have been eligible for workers' compensation benefits or such benefits would have been required to be paid to him.

56.     Thus, to the extent Defendant Doe was an employee of Mr. Sattaru entitled to or eligible for workers compensation benefits to be provided by Mr. Sattaru, the workers' compensation exclusion applies, and there is no coverage under the Policy for any of the claims against Mr. Sattaru or Mrs. Sattaru in the Underlying Petition.

### *Other Premises*

57.     The Policy excludes coverage for injuries "arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person." The term "residence premises" is defined as the dwelling, other structures and land located at the address stated on the Policy Declarations.

58.     The address stated on the Policy Declarations is 3901 Highway D, Defiance, MO.

59.    In the Underlying Petition, Defendant Doe alleges he was injured as a result of his confinement at "various residences" of Mr. and Mrs. Sattaru.

60.    To the extent Defendant Doe's alleged injuries "arise out of premises other than the insured premises that were owned, rented, or controlled by Mr. or Mrs. Sattaru, this exclusion applies to bar coverage, and there is no coverage under the Policy for those claims.

*Late Notice of Lawsuit*

61.    The Policy requires the insured to "promptly notify" Allstate of any bodily injury that could trigger coverage by reporting the circumstances of the loss and the name and address of any potential claimant and witnesses, along with other information.

62.    The Policy also requires the insured to "promptly send" Allstate any legal papers relating to the accident.

63.    The Underlying Petition was filed in March 2024.

64.    Personal counsel for Mrs. Sattaru filed an answer to the Underlying Petition in May 2024.

65.    Personal counsel for Mr. Sattaru entered an appearance in the Underlying Action and filed an answer to the Underlying Petition in February 2025.

66.    However, it was not until August 13, 2025—approximately six months after Mr. Sattaru filed an answer and approximately fifteen months after Mrs. Sattaru filed an answer—that the Sattarus' personal counsel notified Allstate of the claim against Mr. or Mrs. Sattaru.

67.    On information and belief, the late notice of the Underlying Action has caused actual and substantial prejudice to Allstate, because the delay in notifying Allstate of the claim or the Underlying Action has denied Allstate the opportunity to manage and attempt to reach an early

and relatively inexpensive resolution of the claims against Mr. Sattaru and Mrs. Sattaru. It may also have resulted in the loss of evidence, as may be revealed through discovery.

68.    Because Mr. and Mrs. Sattaru have both failed to meet the Conditions of the Policy and have caused prejudice to Plaintiff Allstate by their lack of compliance with those conditions requiring prompt notice of the lawsuit, there is no coverage for the claims against Mr. Sattaru or Mrs. Sattaru in the Underlying Action.

WHEREFORE, Plaintiff Allstate Vehicle and Property Insurance Company prays that this Court declare the rights of the parties under the aforementioned Policy of insurance and enter judgment finding and declaring:

    a.   With respect to the claims against Venkatesh Sattaru (in Counts I, II, and III of the Underlying Petition):

        i.   That the provisions of the Policy provide no coverage whatsoever for the Underlying Claims against Defendant Venkatesh Sattaru;

       ii.   That Allstate has no duty to defend Defendant Venkatesh Sattaru in any legal proceedings related to the Underlying Claims;

      iii.   That Allstate has no duty to indemnify Defendant Venkatesh Sattaru for any portion of any expense or liability that he has incurred or may incur in any legal proceeding related to the Underlying or any future settlement, judgment, or civil penalties that may be entered against Defendant Venkatesh Sattaru, in any other action against Defendant Venkatesh Sattaru arising out of the conduct described in the Underlying Claims;

     iv.    That Allstate has no duty to satisfy any judgment that may be entered against Defendant Venkatesh Sattaru in favor of Defendant John Doe, either in the Underlying Action or arising out of the conduct described in the Underlying Claims against Defendant Venkatesh Sattaru;

b.  With respect to the claims against Defendant Nitya Sattaru (Counts I, II, III, and IV in the Underlying Petition):

     i.    That the provisions of the Policy provide no coverage whatsoever for the Underlying Claims against Defendant Nitya Sattaru;

     ii.    That Allstate has no duty to defend Defendant Nitya Sattaru in any legal proceedings related to the Underlying Claims;

     iii.    That Allstate has no duty to indemnify Defendant Nitya Sattaru for any portion of any expense or liability that she has incurred or may incur in any legal proceeding related to the Underlying or any future settlement, judgment, or civil penalties that may be entered against Defendant Nitya Sattaru, in any other action against Defendant Nitya Sattaru arising out of the conduct described in the Underlying Claims;

     iv.    That Allstate has no duty to satisfy any judgment that may be entered against Defendant Nitya Sattaru in favor of Defendant John Doe, either in the Underlying Action or arising out of the conduct described in the Underlying Claims against Defendant Nitya Sattaru;

c.  That Allstate is entitled to its costs, including attorney fees; and

d.  That Allstate is entitled to any such further relief this Court deems just and proper

under the circumstances.

Respectfully submitted,

HEPLERBROOM LLC

By:  /s/  Patrick A. Bousquet
     Patrick A. Bousquet          #57729MO
     Peter A. Houser              #71278MO
     email: patrick.bousquet@heplerbroom.com
     peter.houser@heplerbroom.com
     701 Market Street, Suite 1400
     St. Louis, Missouri 63101
     314-241-6160 phone
     314-241-6116 fax
     ATTORNEYS FOR PLAINTIFF